## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**SHERRI WHITE**                                                                                  **PLAINTIFF**

**V.**                                                    **CIVIL ACTION NO. 3:19CV234 CWR-LRA**

**ANDREW SAUL,**
**COMMISSIONER OF SOCIAL SECURITY**                                  **DEFENDANT**

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Sherri White appeals the second decision denying her application for a period of disability and disability insurance benefits ("DIB"). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that this matter be remanded for further proceedings consistent with this opinion.

In 2011, Plaintiff filed an application for DIB alleging a disability onset date of November 17, 2010, due to affective/mood disorders, borderline intellectual functioning, herniated disc, anxiety and anxiety attacks, and spina bifida. She has a GED and was approximately 28 years old on her alleged onset date, with previous work experience as a secretary, insurance clerk, florist delivery driver, medical records clerk, certified nursing assistant, and convenience store manager. Following agency denials of her application, an Administrative Law Judge ("ALJ") rendered an unfavorable decision finding that she had not established a disability within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review.

Aggrieved, Plaintiff appealed the ALJ's decision to this court and asserted that the ALJ failed to conduct the 20 C.F.R. § 404.1527(c) analysis before discounting the opinion of Plaintiff's treating physician, Dr. David Moody.  For the reasons set forth in *Hawkins v. Colvin*, No. 3:15CV00938 CWR-JCG, ECF No.18 (S.D. Miss. Mar. 22, 2017), United States District Judge Carlton Reeves agreed and remanded Plaintiff's first appeal so that the required 20 C.F.R. § 404.1527(c) analysis could be performed.  *White v. Colvin* (*White I*), No. 3:15CV172 CWR-LRA, ECF No. 15 (S.D. Miss. Mar. 29, 2017).

After considering additional evidence and conducting a new administrative hearing on remand, the same ALJ concluded that Plaintiff had still not established a disability within the meaning of the Social Security Act.  The Appeals Council denied Plaintiff's second request for review.  She now appeals that decision and asserts that the ALJ made the same errors on remand that were made in *White I*.  She requests that this case be reversed and remanded for an award of disability insurance benefits, or in the alternative, for additional consideration of Dr. Moody's opinion in accordance with the correct legal standards.  This matter is now ripe for review.

At step one of the five-step sequential evaluation on remand,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of November 17, 2010.  At steps two and three, the ALJ found that although Plaintiff's

---

[1] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform?  *See also McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

cervical and lumbar degenerative disc disease, anxiety and depression with history of bipolar disorder, attention deficit disorder, and obesity were severe impairments, they did not meet or medically equal any listing through the date of last insured.  At step four, the ALJ found that Plaintiff had the greater residual functional capacity to perform light work[2] than found in *White* I, except she "should never climb ladders, ropes or scaffolds and should only occasionally balance, stoop, kneel, crouch, crawl, or climb ramps or stairs."  She should also only "perform simple, routine tasks with no more than occasional interaction with the public or coworkers."[3]  Based on vocational expert testimony at step five, the ALJ concluded that through the date of last insured, given Plaintiff's age, education, work experience, and residual functional capacity, she could perform work such as a housekeeping cleaner, car wash attendant, and photocopy machine operator.  Alternatively, the ALJ found that even if Plaintiff's allegations regarding her tolerances for sitting and standing supported additional limitations, Plaintiff could perform work as a deli-clerk instead of a car wash attendant. [4]

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: (1) whether there is substantial evidence in the record to support the ALJ's decision; and (2)

---

[2] Light work, as defined by the regulations, "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Further, a job constitutes light work when "it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

[3] ECF No. 12, p. 469.

[4] *Id.* at 480.

whether the decision comports with relevant legal standards. *Salmond v. Berryhill*, 892 F.3d 812, 816 (5th Cir. 2018). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (internal quotation marks and citation omitted). It must be more than a scintilla, but it need not be a preponderance. *Id.* In reviewing an appeal, this Court may not re-weigh the evidence, try the case de novo, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

### Discussion

Plaintiff assigns two errors on appeal: The ALJ (1) failed to conduct a *Newton* analysis of her primary treating physician's opinion in compliance with this Court's remand order in *White I*, and (2) failed to find her wrist/hand numbness was a severe impairment at step two resulting in an erroneous residual functional capacity determination. The Commissioner counters that the proper standards were applied, and substantial evidence supports the ALJ's decision.

Generally, the opinions of treating physicians have historically been assigned controlling weight in determining disability, though ALJs have always been free to reject any opinion, in whole or in part, when the evidence supports a contrary conclusion. *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017); *Garcia v. Colvin*, 622 F. App'x 405, 410 (5th Cir. 2015). When treating source opinions are assigned little or no weight, the assignment must be predicated on good cause. *Newton v. Apfel*, 209 F.3d 448, 455–

56 (5th Cir. 2000). Good cause exists when treating source opinions are "brief and conclusory, not supported by medically acceptable clinical diagnostic techniques, or otherwise unsupported by the evidence. *Garcia*, 622 F. App'x at 410 (internal quotations and citations omitted). However, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician ***only*** if the ALJ performs a detailed analysis of the treating physician's views using [§ 404.1527(c)] factors." *Newton,* 209 F.3d. at 453 (emphasis in original). These factors require that an ALJ consider the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability of the physician's opinion; the consistency of the opinion with the record as a whole; the specialization of the source; and, any other factors tending to support or contradict the physician's opinion. In previous remands, this this Court has also stressed that "[a]lthough an ALJ is ultimately free to reject medical opinion evidence, 20 C.F.R. § 404.1527 and *Newton* prescribe ***how*** the ALJ must scrutinize the treating physician's medical opinion." *Hawkins, No.* 3:15CV00938 CWR-JCG (emphasis in original) (citing *Purvis v. Colvin*, No. 3:14 Cv-290 CWR-FKB, 2015 WL5667014, * 1 (S.D. Miss. Sep. 25, 2015) ("[P]ost-*Newton* cases. . . as well as the plain language of 20 C.F.R. § 404.1527(c)(2), suggest that the *Newton* factors are supposed to inform whether there is good cause for discarding a treating physician's opinion."). *See also Williams v. Berryhill*, No. 3:17-CV-821-CWR-LRA, 2019 WL 1139495, at *1 (S.D. Miss. Mar. 12, 2019) (observing that a discrepancy exists "on

whether good cause must come first or whether the six-factors may support a good cause determination").

In 2017, the Social Security Administration revised its regulations for evaluating medical opinions.  For claims filed after March 27, 2017, 20 C.F.R. § 404.1520(c) applies, and it provides, *inter alia*, that no specific evidentiary weight, including controlling weight, is to be given to medical opinions from treating sources.  Under the new regulations, supportability and consistency of medical opinions are the most important factors, and ALJs may, but are no longer required to, explain how they considered other factors. § 404.1520c (2019).  Because Plaintiff's application was filed prior to March 27, 2017, 20 C.F.R. § 404.1527(c) still governs her claim.  And, though she assigns two errors in the instant appeal, her central argument is that the ALJ failed to conduct a 20 C.F.R. § 404.1527(c) and *Newton* analysis of her primary treating physician's opinion in compliance with this Court's remand order.

In *White I*, medical records from the Madden Medical Clinic documented Plaintiff's treatment for physical and mental impairments from November 2009 through April 2013, by Dr. David Moody.  In April 2013, Dr. Moody submitted a form entitled *Medical Opinion Re: Ability to Do Work-Related Activities (Physical)*, indicating that in an eight-hour workday, Plaintiff could:  lift and carry 10 pounds occasionally, and less than 10 pounds frequently; stand/walk and sit for less than 2 hours; change positions after sitting for 30 minutes and standing for 60 minutes; walk around every 30 minutes for 15 minutes at a time; shift positions at will from standing/walking; occasionally perform postural activities except stooping and climbing ladders.  He also indicated that her

ability to reach and push/pull was affected by her impairments.  He further opined that Plaintiff had environmental restrictions and would miss work more than three times per month due to her impairments.[5]

In *White I*, the ALJ explained that she assigned Dr. Moody's opinion little weight because she found the limitations that he assigned were likely based on Plaintiff's subjective complaints as they were inconsistent with his own treatment records and other evidence of record.  She did not identify Dr. Moody as Plaintiff's primary treating physician but she noted that primary care treatment notes from Madden Medical Clinic from November 2009 through April 2013 revealed Plaintiff's treatment had been "generally conservative and routine in nature."  She noted that Plaintiff was treated seven times from November 2009 through July 2011, and during that time period, she had a normal gait with the exception of one visit, when she was treated for plantar fascial fibromatosis.  The clinical findings during this time period revealed Plaintiff had tenderness to palpitation of the cervical, thoracic and lumbar spine, and her diagnosis was pain in joint involving multiple sites.  Additional treatment notes from August 19, 2011, through February 15, 2013, reflected monthly treatments for sinusitis and other routine medical conditions. The ALJ observed that Plaintiff's clinical findings were the same, with the exception of the "findings first made on October 15, 2012, of limited range of motion of the cervical spine due to pain with a notation of 10 to 15 degrees loss of range of motion, and tenderness to palpitation of the extremities."  Thereafter, medical records

---

[5]ECF No. 12, pp. 421-25.

from March through April 2013 showed only that Plaintiff received prescription refills, and treatment for sinusitis and a benign neoplasm of the skin.[6]  The ALJ explained further that while the objective medical evidence documented a history of x-ray and MRI scans supporting diagnoses of degenerative disc disease of the lumbar and cervical spines, more recent clinical findings from Madden Medical Clinic did not support the degree of physical limitations Dr. Moody assigned.[7]

In her first appeal, Plaintiff argued that the ALJ's analysis of Dr. Moody's opinion was brief and conclusory, and failed to give due consideration to the *Newton* factors.  The Court agreed, expressing concern that the ALJ did not mention any of the *Newton* factors in her decision, and "never identified Dr. Moody as Plaintiff's primary treating physician."  *White I*, No. 3:15CV172 CWR-LRA, ECF No. 15, p. 1.  The Court also expressed concern that the ALJ "may have incorrectly assumed that the primary treatment notes from Madden Clinic, which she found contradicted Dr. Moody's opinion, were generated by another physician—rendering a *Newton* analysis unnecessary."  *Id.*

Plaintiff's case was assigned to the same ALJ on remand and a second administrative hearing was held on November 9, 2017.  Plaintiff testified that her impairments and limitations had gotten worse since her first hearing.  She submitted additional medical records from Dr. Moody and other medical providers reflecting treatment through November 2017.  No new opinion was submitted from Dr. Moody or

---

[6]ECF No. 12, pp. 27, 323-38, 372-420, 426-43.

[7]*Id*. at 27.

any other physician, but the ALJ's summary of the evidence notes that Madden Medical

Clinic records from June 2013 through August 2014 reflect medication refills and eight

visits with no abnormalities except tenderness of the cervical, thoracic and lumbar spine,

and the bilateral upper and lower extremities.[8]

In a lengthy 25-page opinion detailing Plaintiff's testimony, subjective complaints

and medical history on remand, the ALJ found Dr. Moody's 2013 opinion was still

entitled to little weight. She explained as follows:

> Given the findings in his treatment notes as to the period at issue, it
> appears the limitations he propounded were based primarily on the
> claimant's subjective complaints.  While Dr. Moody has been the
> claimant's long-standing primary care physician, whom she has seen
> essentially on a monthly basis, his examination findings were more often
> than not within normal limits, except for tenderness of the cervical, thoracic
> and lumbar spine and of the bilateral upper and lower extremities (a factor
> which is at least to some extent subjective).  On one occasion, Dr. Moody
> noted gait, but that was associated with an episode of plantar fasciitis.
> Additionally, on one occasion in 2012, Dr. Moody found that she had
> limited range of motion of the cervical spine "due to pain," but it was only
> a 10 to 15-degree loss of range of motion; such limited motion was not
> documented again in subsequent treatment notes through August 2014.
>
> It is also noted that Dr. Moody's treatment has been generally
> conservative and routine in nature.  Finally, other treatment records in
> evidence reflect primarily normal musculoskeletal and neurological
> examination findings.  Neurosurgery records from 2008 document normal
> findings except for a reproduction of neck pain with Spurling's testing and
> some discomfort in the right shoulder with lifting arm overhead; cervical
> spine x-rays showing only minimal degenerative changes with no
> instability.  This specialist determined that there was no surgical issue.
> There was also significant improvement reported after one epidural
> injection. Pain management records from 2008 show that she was
> discharged after one month at a maximum medical improvement with a
> diagnosis of cervical enthesopathy.  The level of limitations reported by Dr.
> Moody are not supported by medically acceptable clinical diagnostic

---

[8] ECF No. 12, p. 473.

techniques, or by his or her other physician's objective and clinical findings.[9]

In the instant appeal, Plaintiff asserts that while the ALJ provided a longer discussion of Dr. Moody's opinion, she still failed to provide a detailed analysis of the *Newton* factors as directed by the Court in *White I*. Specifically, she charges that: "No mention is made of what the necessary factors for consideration are, and there is no discussion indicating how the ALJ weighted any factor against any other in light of the evidence to reach a conclusion."[10]

As in *White I*, the ALJ included the standard language that she had "considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527. . . ." But beyond this, she did not enumerate the *Newton* factors[11] nor reference the directives of the Court's remand order. However, the ALJ did note that Dr. Moody was Plaintiff's long-standing primary care physician who had treated her on a monthly basis. Assuming *arguendo* the Court finds these observations sufficiently address the length, frequency, specialty, nature and extent of Plaintiff's treatment relationship with Dr. Moody, the Court need only decide whether the supportability and consistency of Dr. Moody's opinion were sufficiently addressed.

---

[9] ECF No. 12, p. 478.

[10] ECF No. 14, p.13.

[11] *But see Wiltz v. Comm'r of Soc. Sec. Admin.*, 412 F. Supp. 2d 601, 608 (E.D. Tex. 2005) ("[T]he adjudicator [need only] 'consider' the factors. Neither the regulation nor interpretive case law requires that an ALJ specifically name, enumerate, and discuss each factor in outline or other rigid mechanical form.").

Plaintiff argues that they were not because the ALJ only compared Dr. Moody's conclusions with her neurological and pain management records from 2008. She argues that these records pre-date both her alleged onset date and Dr. Moody's opinion, "rendering the ALJ's efforts on this point largely irrelevant." According to Plaintiff, that her "condition was not as serious two years before she even claims to have become disabled is not helpful in undermining Dr. Moody's opinion and does nothing to contribute to the required *Newton* analysis."[12]

While the neurological and pain management records from 2008 are the only competing evidence the ALJ discusses in her *Newton* analysis, elsewhere in the summary of her opinion, she makes the following observation about treatment records from another medical provider:

> In October of 2013, she was seen for an evaluation of hormone replacement therapy and for a gluteal abscess. The musculoskeletal and neurological portions of her Review of Systems were negative for any complaints, including arthralgias, myalgias, joint swelling, and gait instability; and back, extremities, musculoskeletal and neurologic examination findings were normal.[13]

These records are from Premier Medical Group of Carthage and indicate that Plaintiff was seen twice there in October 2013. Though Plaintiff did not resume her visits there until October 2015, the earlier records cast doubt on the level of limitations assigned by Dr. Moody in 2013. It is well-settled that an ALJ is not required to conduct a detailed *Newton* analysis when there is competing first-hand medical evidence from an examining

---

[12] ECF No. 14, p. 13.

[13] ECF No. 12, p. 473.

11

or treating physician. *Zimmerman v. Astrue*, 288 F. App'x 931, 935 (5th Cir. 2008). However, it is unclear whether the Court would find the 2013 records were sufficient to render *Newton* inapplicable here.[14]

In addition to the 2013 records on remand, the ALJ cited nerve conduction studies from 2015 showing no evidence of radiculopathy, brachial plexopathy, nerve entrapment, or generalized peripheral neuropathy in her summary of the evidence. The relevant time period for Plaintiff to establish disability is from her alleged onset date of November 2010 through her date last insured of September 30, 2014. Like the 2015 nerve conduction studies, several of the records submitted on remand post-date this period. As such, they are only relevant to the extent that they shed light on Plaintiff's condition during this period. *Anderson v. Schweiker*, 651 F.2d 306, 311, n.3 (5th Cir. 1981); *Hernandez v. Astrue*, 278 F. App'x 333, 338 (5th Cir. 2008). Though the ALJ's decision on remand gives a detailed summary of the evidence, it is difficult to discern from her narrative discussion the extent to which her analysis and conclusions concerning the supportability and consistency of Dr. Moody's opinion is limited to the relevant time period. Absent clarification in this regard, the undersigned cannot confidently conclude that the ALJ's *Newton* analysis on remand sufficiently complies with the Court's

---

[14] *See Brown v. U.S. Comm'r*, No. 6:15-CV-02171, 2016 WL 7742820 (W.D. La. Dec. 9, 2016), *report and recommendation adopted,* No. 6:15-CV-02171, 2017 WL 104455 (W.D. La. Jan. 10, 2017) (observing that a contrary medical opinion "was given from the viewpoint of a doctor who dealt only with the claimant's spinal issues and did not treat her heart condition, her diabetes, her chronic bronchitis, or her other medical problems").

directives of *White I. See also Hawkins*, No. 3:15CV00938 CWR-JCG. This difficulty is compounded by the fact that Dr. Moody's 2013 medical source statement remains the only opinion from a treating physician of record concerning Plaintiff's physical limitations. Yet, though he continued to treat her during the insured period, there is an 18-month lapse between Dr. Moody's medical source statement and Plaintiff's date of last insured.

Accordingly, the undersigned recommends that this matter be remanded for further proceedings. On remand, the ALJ should set forth with greater specificity her findings regarding the supportability and consistency of Dr. Moody's opinion, taking care to link her findings to specific evidence through the date last insured and explain which portions of Dr. Moody's opinion were credited and which portions were not. If warranted upon further review, the ALJ should obtain an updated medical opinion from Dr. Moody concerning Plaintiff's physical limitations through the date last insured. Because the undersigned recommends remanding for further development on these grounds, the Court need not consider whether it should be remanded on the other ground raised herein.

### NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. Within 7 days of the service of the objection, the opposing party must either

serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

Respectfully submitted on August 18, 2020.


_____ s/ Linda R. Anderson _____
UNITED STATES MAGISTRATE JUDGE